**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| THOMAS RUMLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV323 |
| | ) | |
| CITY OF GRAHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Partial Motion to Dismiss Amended Complaint (Docket Entry 15; <u>see also</u> Docket Entry 16 (Brief in Support)). (<u>See</u> Docket Entry dated Oct. 21, 2024.) For the reasons that follow, the Court should grant in part and should deny in part the instant Motion.

<u>INTRODUCTION</u>

Plaintiff commenced this action in this Court by filing a Complaint (Docket Entry 1), Defendants then moved to dismiss certain of Plaintiff's claims (<u>see</u> Docket Entry 9), and Plaintiff thereafter filed an Amended Complaint (Docket Entry 12). The Amended Complaint asserts the following claims:

1) "Deprivation of Rights in Violation of 42 U.S.C. § 1983 against All Defendants" (<u>id.</u> at 7);[1]

---

1 All quotations from the parties' filings omit all-caps font, bold, and underscoring. The assertion of a claim under Section
(continued...)

2) "Violation of North Carolina Wage and Hour Act" (id.);[2]

3) "Wrongful Termination in Violation of Public Policy pursuant to N.C. Gen. Stat. § 143-422.2 against Defendant City of Graham" (id. at 8 (space added));

4) "Breach of Implied Contract against Defendant City of Graham" (id.);

5) "Tortious Interference with Employment Contract against Defendants [Jason] Moore and [Tommy] Cole" (id. at 9); and

6) "Breach of Implied Duty of Good Faith and Fair Dealing against [Defendant] City of Graham" (id. at 10).

Defendants countered by filing the instant Motion, "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [] mov[ing the Court] to partially dismiss [the Amended] Complaint

_____

1(...continued)
1983 gives rise to federal-question jurisdiction under 28 U.S.C. § 1331.  See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) ("[Section 1331's] provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983)." (italics omitted)).  This Court's "original jurisdiction over [that] federal [claim] carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact . . . ."  City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 164-65 (1997) (internal quotation marks omitted); see also id. at 165 ("Congress has codified those principles in the supplemental jurisdiction statute . . . ." (citing 28 U.S.C. § 1367)).  Plaintiff's claims appear to share a common factual nucleus.  (See Docket Entry 12 at 2-10 (setting out "Factual Allegations" and asserting claims).)

2 The heading for this claim does not identify the subject Defendants, but the allegations thereunder target only the conduct of Defendant City of Graham.  (See Docket Entry 12 at 7-8.)

2

with prejudice for failure to state a claim upon which relief may be granted." (Docket Entry 15 at 1.) Specifically, the instant Motion contends that (A) "Plaintiff has not alleged facts that support a violation of the North Carolina Wage and Hour Act" (id.), (B) "Plaintiff's wrongful termination in violation of public policy [claim] fails in part to the extent Plaintiff alleges his termination was in retaliation for any alleged complaints of discrimination" (id. at 2), (C) "Plaintiff's claim for breach of implied contract is subject to dismissal because Plaintiff has failed to plead facts sufficient to support such a claim" (id.), (D) "Plaintiff's claim for tortious interference with contract is subject to dismissal because Plaintiff has failed to show that Defendants acted with legal malice" (id.), (E) "Plaintiff's claim for breach of implied duty of good faith and fair dealing is subject to dismissal because Plaintiff has failed to plead facts sufficient to support such a claim" (id.), and (F) "[t]he claims asserted against the individual Defendants in their official capacities are duplicative of the claims against [Defendant] City of Graham" (id.). Plaintiff has responded in opposition (see Docket Entry 17 (Response); Docket Entry 18 (Brief in Opposition)) and Defendants have replied (see Docket Entry 20 (Reply)).[3]

_____

    3 The parties' filings concerning the instant Motion presume that North Carolina law governs Plaintiff's state law claims. (See, e.g., Docket Entry 16 at 5-11 (discussing North Carolina law in seeking dismissal of state law claims); Docket Entry 18 at 5-11
(continued...)

DISCUSSION

"To survive a motion to dismiss [under Rule 12(b)(6)], a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (internal quotation marks omitted). "Thus, when

---

3(...continued)
(discussing North Carolina law in opposing dismissal of state law claims).) "A federal court . . . exercising supplemental jurisdiction over state law claims must apply the substantive law of the forum state, including the for[u]m state's choice of law rules." Hill v. AQ Textiles LLC, 582 F. Supp. 3d 297, 318 (M.D.N.C. 2022) (Biggs, J.). "North Carolina courts follow the First Restatement of Conflict of Laws in actions sounding in tort and apply the tort law of the state where the injury occurred." Id. (citing, inter alia, SciGrip, Inc. v. Osae, 373 N.C. 409, 420, 838 S.E.2d 334, 343 (2020)). As to contractual claims, North Carolina law provides "that the interpretation of a contract is governed by the law of the place where the contract was made." Tanglewood Land Co., Inc. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). With those precepts in mind, the Court (like the parties) should look to North Carolina law to resolve Plaintiff's state law claims, as the facts alleged in the Amended Complaint indicate that he suffered any tortious injury at Defendants' hands in North Carolina and made any contract with Defendant City of Graham in North Carolina (see Docket Entry 12 at 2-10 (setting out "Factual Allegations" and asserting claims)). "[T]he highest court of the state is the final arbiter of what is state law." West v. American Tel. & Tel. Co., 311 U.S. 233, 236 (1940). "Because North Carolina currently has no mechanism for [federal courts] to certify questions of state law to its Supreme Court, . . . [the Court] must follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (internal quotation marks omitted).

4

considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Id. "But importantly, [pleading a plausible claim] 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[ ] will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Iqbal, 556 U.S. at 678 ("[The pleading standard] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Finally, to avoid dismissal for failure to state a claim, "[a] complaint must contain 'factual allegations sufficient to raise a right to relief above the speculative level.'" Bing, 959 F.3d at 616 (internal brackets and ellipsis omitted) (quoting Twombly, 550 U.S. at 555); see also Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal citation and quotation marks omitted)).

<u>North Carolina Wage and Hour Act Claim</u>

"Under the [North Carolina Wage and Hour A]ct, an employer is obliged to pay wages . . . when due." New v. Thermo Fisher

*Scientific, Inc.*, No. 1:19CV807, 2022 WL 787954, at *12 (M.D.N.C. Mar. 15, 2022) (unpublished) (Schroeder, C.J.) (citing N.C. Gen. Stat. § 95-25.6). Furthermore, "[t]he [North Carolina] Wage and Hour Act . . . provides that 'for the purposes of [Section] 95-25.6 . . . "wage" includes . . . vacation pay . . . when the employer has a policy or a practice of making such payments.'" *Id.* (internal brackets omitted) (quoting N.C. Gen. Stat. § 95-25.2(16)). "Any employer who violates the provisions of . . . [N.C. Gen. Stat.] §§ 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee . . . in the amount of . . . unpaid amounts due . . ., plus interest at the legal rate . . . from the date each amount first came due." N.C. Gen. Stat. § 95-25.22(a); *see also* N.C. Gen. Stat. § 95-25.22(a1) (authorizing liquidated damages in some cases); N.C. Gen. Stat. § 95-25.22(b) (creating private right of action for employees to recover amounts due); N.C. Gen. Stat. § 95-25.22(d) (permitting recovery by employee of "costs and fees of the action and reasonable attorneys' fees").

The Amended Complaint alleges that, "[o]n or around November 28, 1996, Plaintiff started working with [Defendant] City [of Graham] and began working for [its] Fire Department [on] April 2, 2002." (Docket Entry 12 at 2.) According to the Amended Complaint, (A) "[Defendant] City [of Graham] offers an accrual vacation benefit . . . based on the employee's years of service." (*Id.* at 8 (citing Docket Entry 12-1); *see also* Docket Entry 12-1 at

6

3 (indicating that employees of Defendant City of Graham with "20+ Years of Service" receive "20 days / 13.33 hours" of vacation "[a]ccrued [p]er [y]ear/[h]ours [p]er [m]onth")), and (B) its "Personnel Policy Manual provides that 'employees shall be granted the use of earned vacation leave upon request in advance at those times designated by the department head which will least obstruct normal operations of [Defendant C]ity [of Graham]'" (Docket Entry 12 at 8 (internal brackets omitted)). The Amended Complaint additionally alleges that, "[o]n or around June 28, 2022, Plaintiff requested vacation time off from [the Fire Department Chief, Defendant] Cole" (id. at 5), who "responded that Plaintiff had to sign his evaluation to get his time off" (id.), despite that fact that "[t]here is nothing in the policy requir[ing] an employee to sign an evaluation to exercise their earned vacation benefit" (id. at 8). Finally (as concerns this claim), the Amended Complaint alleges that "[Defendant] City [of Graham] improperly withheld the wage benefit of paid vacation time off because Plaintiff did not sign his evaluation, which is a reason not covered under North Carolina law or [Defendant] City [of Graham's] policy." (Id.; see also id. ("[Defendant] City [of Graham] failed to give all vacation time off or payment in lieu of time off in accordance with the company policy or practice.").)

Defendants' Brief in Support of the instant Motion acknowledges that, under North Carolina law, "'if an employer

provides [such] promised benefits for employees, the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice.'" (Docket Entry 16 at 5 (quoting N.C. Gen. Stat. § 95-25.12).) In Defendants' view, "[the] Amended Complaint is still devoid of factual support that [Plaintiff] was not allowed to take vacation time . . . ." (Id.; see also id. ("[T]here is no allegation that [Plaintiff] was prevented from taking off or receiving benefits.").) "As such, [Defendants have contended] this claim should be dismissed." (Id.)

The Brief in Opposition to the instant Motion, in turn, points to the plain language of the North Carolina Wage and Hour Act, which mandates that "'[e]mployees shall be notified in accordance with [N.C. Gen. Stat. §] 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay. Employees not so notified are not subject to such loss or forfeiture.'" (Docket Entry 18 at 5-6 (quoting N.C. Gen. Stat. § 95-25.12).)[4] Based on that statutory language and the Amended Complaint's allegations, the Brief in Opposition maintains that "Plaintiff has sufficiently pled a plausible [North Carolina] Wage and Hour Act violation." (Id. at 5.) The Court should agree.

----

4 The cross-referenced provision requires, inter alia, written notice to new employees "of the promised wages," N.C. Gen. Stat. § 95-25.13(1), written or conspicuously posted notice of "practices and policies with regard to promised wages," N.C. Gen. Stat. § 95-25.13(2), and written notice "at least one pay period prior to any changes in promised wages," N.C. Gen. Stat. § 95-25.13(3).

As noted above, the Amended Complaint alleges that "[t]here is nothing in [Defendant City of Graham's] policy requir[ing] an employee to sign an evaluation to exercise their earned vacation benefit." (Docket Entry 12 at 8). That allegation supports a reasonable inference that Defendant City of Graham could not have "notified [Plaintiff] in accordance with [N.C. Gen. Stat. §] 95-25.13 of any policy or practice [that failure to sign an evaluation] requires or results in loss or forfeiture of vacation time or pay," N.C. Gen. Stat. § 95-25.12.[5] Accordingly, under the North Carolina Wage and Hour Act, Plaintiff was "not subject to such loss or forfeiture [of paid vacation time]," id., but, nonetheless (per the Amended Complaint), "[Defendant] City [of Graham] improperly withheld the wage benefit of paid vacation time off because Plaintiff did not sign his evaluation" (Docket Entry 12 at 8).[6] "[C]onsider[ing] th[ose] factual allegations in the [Amended C]omplaint as true and draw[ing] all reasonable inferences in favor of [P]laintiff," Bing, 959 F.3d at 616, he has "plead[ed]

_____

5 Simply put, if Defendant City of Graham's policy did not identify failure to sign an evaluation as a basis for denial of paid vacation time (as the Amended Complaint alleges), then Defendant City of Graham could not possibly have notified Plaintiff of the existence of such a policy (as required by the North Carolina Wage and Hour Act), because Defendant City of Graham could not give proper notice of a policy that did not exist.

6 That last, above-quoted allegation belies Defendants' argument in their Reply that "Plaintiff d[id] not allege that he ever lost or forfeited any wages, either through loss of vacation time or pay" (Docket Entry 20 at 2).

enough factual allegations to state a claim to relief that is plausible on its face," id. (internal quotation marks omitted).

### Wrongful Termination in Violation of Public Policy pursuant to N.C. Gen. Stat. § 143-422.2 Claim

"North Carolina is an employment-at-will state." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). However, "[t]here are limited exceptions." Id. Of relevance here, "th[e North Carolina Supreme] Court has recognized a public-policy exception to the employment-at-will rule." Id. In other words, "[i]n North Carolina, an at-will employee has a claim for wrongful discharge if 'the termination is done for an unlawful reason or purpose that contravenes public policy.'" Mebane v. GKN Driveline N. Am., Inc., No. 1:18CV892, 2021 WL 4412326, at *9 (M.D.N.C. Sept. 27, 2021) (unpublished) (Biggs, J.) (quoting Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999)); see also Wray v. Northern Telecom, Inc., No. 1:93CV120, 1995 WL 945825, at *7 (M.D.N.C. Jan. 27, 1995) (unpublished) (Bullock, C.J.) (observing that "North Carolina Supreme Court . . . [has] created the tort of wrongful discharge in violation of public policy"). "To state [such] a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that her [or his] dismissal occurred for a reason that violates public policy." Wilkes v. Argueta, No. 1:16CV260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (unpublished) (Biggs, J.) (internal brackets, ellipsis, and

10

quotation marks omitted).  For purposes of pleading a wrongful discharge claim under North Carolina law, "'public policy is violated when an employee is fired in contravention of <u>express policy declarations</u> contained in the North Carolina General Statutes.'"  <u>Id.</u> (emphasis added) (quoting <u>Amos v. Oakdale Knitting Co.</u>, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992)).

The Amended Complaint asserts that Defendant City of Graham wrongfully terminated Plaintiff "in violation of public policy <u>pursuant to N.C. Gen. Stat. § 143-422.2</u>" (Docket Entry 12 at 8 (emphasis and space added)), in that "Plaintiff was wrongfully terminated on the basis of his age and for complaining of actions taken against him due to his age and disability" (<u>id.</u>), in contravention of "public policy <u>pursuant to N.C. Gen. Stat. § 143-422.2</u>" (<u>id.</u> (emphasis and space added); <u>see also id.</u> ("[D]efendant[ City of Graham's] motivation in terminating [ P]laintiff violated this public policy.")).  Thus, as accurately summarized by Defendants, the Amended Complaint "alleges a violation of the North Carolina Equal Employment Practices Act ('NCEEPA'), N.C.[ Gen. Stat. §] 143-422.2, as the public policy that supports [Plaintiff's] wrongful termination claim." (Docket Entry 16 at 5-6.)  The statutory section invoked by the Amended Complaint - which indeed lies within North Carolina's "Equal Employment Practices Act," N.C. Gen. Stat. § 143-422.1 (giving that "Short title" to N.C. Gen. Stat. §§ 143-422.1 -143.422.3) – states, in pertinent

part, as follows: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a) (emphasis added).

The first alleged basis for Plaintiff's wrongful termination claim, i.e., "wrongful[] terminat[ion] on the basis of his age" (Docket Entry 12 at 8 (emphasis added)), clearly falls within the NCEEPA's public policy proscription, see N.C. Gen. Stat. § 143-422.2(a) (expressing "public policy" in favor of "protect[ing] and safeguard[ing] the right and opportunity of all persons to . . . hold employment without discrimination or abridgement on account of . . . age"). Defendants have not requested dismissal of that first part of the wrongful termination claim, but instead have requested "dismissal regarding only the second purported reason, which is effectively a retaliation claim." (Docket Entry 16 at 6.) As support for that request, they have argued "that North Carolina does not recognize a claim for wrongful termination grounded in a retaliation theory under [the] NCEEPA." (Id. (citing, inter alia, McLean v. Patten Cmtys, Inc., 332 F.3d 714, 719 (4th Cir. 2003)).)[7]

_____

    7 In that cited case, the United States Court of Appeals for the Fourth Circuit "h[e]ld that there is no private right of action under North Carolina law for retaliation under § 143-422.2." McLean, 332 F.3d at 719. Since then, "North Carolina courts and
                                                        (continued...)

Plaintiff's Brief in Opposition to the instant Motion acknowledges <u>both</u> that his claim for wrongful termination relies, in part, on allegations of retaliation (<u>see</u> Docket Entry 18 at 6 (describing claim as one "for age discrimination as well as retaliation") <u>and</u> that "North Carolina courts do not recognize a public policy exception of retaliation based on the [NC]EEPA" (<u>id.</u>). Plaintiff nonetheless has opposed dismissal of the retaliation prong of his wrongful termination claim by pointing to (A) another North Carolina statute, "the Persons with Disabilities Protection Act ([NC]PDPA)" (<u>id.</u> (citing N.C. Gen. Stat. §§ 168A-1 - 168A-12)), and (B) North Carolina decisional law "recogniz[ing] a claim for wrongful termination in violation of public policy based on the [NC]PDPA" (<u>id.</u> at 7 (citing <u>Woody v. AccuQuest Hearing Ctr., LLC</u>, 284 N.C. App. 540, 550, 877 S.E.2d 1, 8, <u>appeal withdrawn</u>, 878 S.E.2d 147 (N.C. 2022)); <u>see also</u> <u>id.</u> at 6 (arguing that North Carolina "does recognize a public policy exception of retaliation based on disability pursuant to [NC]PDPA")).[8]

7(...continued)
federal courts applying North Carolina law have repeatedly found that no private right of action exists for retaliation in violation of public policy." <u>Long v. Walmart, Inc.</u>, No. 1:21CV215, 2021 WL 5762131, at *6 (M.D.N.C. Dec. 3, 2021) (unpublished) (Osteen, J.) (internal ellipsis and quotation marks omitted).

8 As the Reply notes, the Brief in Opposition "does not refer to any additional public policy supporting a claim for retaliatory discharge[] based on complaints about age [discrimination]" (Docket Entry 20 at 2 n.1). (<u>See</u> Docket Entry 18 at 6-7.)

The NCPDPA includes this provision: "No employer shall discharge . . . any person . . . because the person has opposed any practice made a discriminatory practice by th[e NCPDPA] . . . ." N.C. Gen. Stat. § 168A-10(a). Furthermore, the NCPDPA makes "[i]t [] a discriminatory practice for . . . [a]n employer . . . to discriminate against a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment[.]" N.C. Gen. Stat. § 168A-5(a). The foregoing plain language of the NCPDPA prohibits retaliatory discharge of employees for opposition to employment discrimination based on disability and thus, under the NCPDPA, "person[s] aggrieved by [such] conduct prohibited by [Section] 168A-10[] may bring a civil action to enforce [their] rights," N.C. Gen. Stat. § 168A-11(a), albeit solely to obtain "declaratory and injunctive relief," N.C. Gen. Stat. § 168A-11(b), along with "back pay," id., and subject to a limitations period extending only to "180 days after the date on which the aggrieved person became aware of or, with reasonable diligence, should have become aware of the . . . prohibited conduct," N.C. Gen. Stat. § 168A-12.

But the Amended Complaint does not assert a claim for retaliation under those provisions of the NCPDPA; rather, the Amended Complaint asserts a claim for "wrongful termination in violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2" (Docket Entry 12 at 8 (emphasis and space added)) and reiterates,

14

as the basis for that claim, that "[P]laintiff was protected by th[e] public policy pursuant to N.C. Gen. Stat. § 143-422.2" (id. (emphasis and space added)). The Court therefore does not need to address Plaintiff's arguments about the NCPDPA, because "parties cannot amend their complaints through briefing," Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Moreover, the case cited by Plaintiff for the proposition that North Carolina "recognize[s] a public policy exception of retaliation based on disability pursuant to [the NC]PDPA" (Docket Entry 18 at 6 (emphasis added)) concludes only that the plaintiff there adequately alleged that "[the d]efendant violated the public policy of North Carolina as expressed by [its] legislature by terminating [the p]laintiff's employment because of her disability," Woody, 284 N.C. App. at 545, 877 S.E.2d at 5 (emphasis added); see also id., 284 N.C. App. at 553, 877 S.E.2d at 10 ("Our dissenting colleague posits that [the p]laintiff may have difficulty proving that she was terminated based on her disability; regardless, she has alleged facts supporting such a claim . . . .").

In reaching that conclusion, the Woody Court focused on this language from the NCPDPA:

> The [NC]PDPA provides, in pertinent part and as quoted by [the p]laintiff:
>
> > (a) The purpose of [the PDPA] is to ensure equality of opportunity, to promote independent living, self-determination, and economic self-sufficiency,

15

and to encourage and enable all persons with disabilities to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.

(b) The General Assembly finds that: <u>the practice of discrimination based upon a disabling condition</u> is contrary to the public interest and to the principles of freedom and equality of opportunity; <u>the practice of discrimination on the basis of a disabling condition</u> threatens the rights and proper privileges of the inhabitants of this State; and <u>such discrimination</u> results in a failure to realize the productive capacity of individuals to their fullest extent.

<u>Id.</u>, 284 N.C. App. at 544, 877 S.E.2d at 5 (emphasis added) (block quoting N.C. Gen. Stat. § 168A-2). That public policy declaration within the NCPDPA condemns <u>discrimination based on disability</u>, not <u>retaliation for opposing discrimination based on disability</u>. <u>See id.</u> In sum, <u>Woody</u> does not establish that North Carolina "recognize[s] a public policy exception of retaliation based on [opposing] disability [discrimination] pursuant to [the NC]PDPA" (Docket Entry 18 at 6) and any "[s]uch extension should come, if at all, from the North Carolina courts," <u>Wray</u>, 1995 WL 945825, at *7; <u>see also Myers v. Sessoms & Rogers, P.A.</u>, 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011) ("Federal courts applying state laws should not create or expand a state's common law or public policy.").[9]

_____

9 Alternatively, the Court should conclude (consistent with Defendants' position) that the Amended Complaint lacks factual
(continued...)

16

Given all these considerations, the Court should dismiss any claim that "Plaintiff was wrongfully terminated . . . for complaining of actions taken against him due to his age and disability" (Docket Entry 12 at 8).

<u>Breach of Implied Contract</u>

Under North Carolina law, "the existence of the relation of employer and employee . . . is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied." <u>Hollowell v. North Carolina Dep't of Conservation and Dev.</u>, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934); <u>see also</u> <u>Archer v. Rockingham Cnty.</u>, 144 N.C. App. 550, 557, 548 S.E.2d 788, 793 (2001) ("Employment contracts may be express or implied."), <u>disc. rev. denied</u>, 355 N.C. 210, 559 S.E.2d 796 (2002). "An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." <u>Archer</u>, 144 N.C. App. at 557, 548 S.E.2d at 793. The Amended Complaint alleges that "Plaintiff was an employee of the City [of Graham] . . . at the time of the acts and occurrences described in the

---

9(...continued)
matter showing "that Plaintiff was retaliated against due to his complaints of disability discrimination" (Docket Entry 20 at 3; <u>see also</u> <u>id.</u> ("Aside from one conclusory allegation, there are no allegations that Plaintiff ever complained to anyone regarding any alleged . . . disability discrimination.")). (<u>See</u> Docket Entry 12 at 2-7 (setting forth Plaintiff's "Factual Allegations"), 8 (asserting Plaintiff's wrongful termination claim).)

[Amended] Complaint." (Docket Entry 12 at 2; see also id. ("On or around November 28, 1996, Plaintiff started working with [Defendant] City [of Graham] and [he] began working for [its] Fire Department [on] April 2, 2002."), 9 ("Plaintiff rendered services as a fire equipment operator for [Defendant] City [of Graham].").) In addition, the Amended Complaint alleges that "Defendant [City of Graham] paid Plaintiff approximately $51,500 a year." (Id. at 9.)

The allegation "that there was a pay plan in place for . . . [P]laintiff[] indicates that there was some agreement between [him] and [Defendant City of Graham], and an implied oral contract for services existed." Archer, 144 N.C. App. at 557, 548 S.E.2d at 793. The Amended Complaint evidently asserts that Defendant City of Graham breached that implied employment contract when "Plaintiff received [a] Notice of Dismissal on November 8, 2022 effective immediately." (Docket Entry 12 at 6.) In particular, under the heading "Breach of Implied Contract against Defendant City of Graham" (id. at 8), the Amended Complaint alleges that "Plaintiff is owed damages based on the period after he was terminated, as well as [for] loss of retirement, loss of benefits and . . . his anticipated fees for work and expenses plus a termination fee" (id. at 9; see also id. ("[Defendant] City[ of Graham's] termination of Plaintiff resulted in reduced retirement benefits . . . . As a terminated employee, Plaintiff is not eligible for health retirement benefits . . . .").

18

That claim fails as a matter of law, because "[t]he [North Carolina Supreme] Court has repeatedly held that[,] in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." Kurtzman, 347 N.C. at 331, 493 S.E.2d at 422 (emphasis added); see also id. ("[P]arties can remove the at-will presumption by specifying a definite period of employment contractually."). As the Brief in Support of the instant Motion states, "Plaintiff has not pled facts showing he was anything other than an at-will employee" (Docket Entry 16 at 7), i.e., the Amended Complaint lacks any factual matter which would permit a reasonable fact-finder to determine that Plaintiff and Defendant City of Graham entered into an implied contract "establishing a definite term of employment," Kurtzman, 347 N.C. at 331, 493 S.E.2d at 422. (See Docket Entry 12 at 2-7 (setting forth Plaintiff's "Factual Allegations"), 8-9 (asserting Plaintiff's breach of implied contract claim).)[10]

---

10 Plaintiff's Brief in Opposition to the instant Motion does not offer any argument to the contrary and instead argues exclusively about the existence of an implied employment contract without showing that any such contract "establish[ed] a definite term of employment," Kurtzman, 347 N.C. at 331, 493 S.E.2d at 422 (emphasis added). (See Docket Entry 18 at 7-8 (opposing dismissal of claim for breach of implied contract).)

## Tortious Interference with Employment Contract

Under North Carolina law:

> The tort of interference with contract has five elements:
> (1) a valid contract between the plaintiff and a third
> person which confers upon the plaintiff a contractual
> right against a third person; (2) the defendant knows of
> the contract; (3) the defendant intentionally induces the
> third person not to perform the contract; (4) and in
> doing so acts without justification; (5) resulting in
> actual damage to [the] plaintiff.

United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 661, 370
S.E.2d 375, 387 (1988). "Such a claim also applies to at-will
employment contracts." Wilkes, 2017 WL 1215749, at *6 (citing
Smith v. Ford Motor Co., 289 N.C. 71, 84, 94-95, 221 S.E.2d 282,
290, 296 (1976)). However, "[a]s a general rule, '"non-outsiders"
to an employment contract often enjoy qualified immunity from
liability for inducing their corporation or other entity to breach
its contract with an employee.'" Id. (quoting Lenzer v. Flaherty,
106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992)); see also
Smith, 289 N.C. at 87, 221 S.E.2d at 292 ("[A] non-outsider is one
who, though not a party to the terminated contract, had a
legitimate business interest of his own in the subject matter.").
But that qualified immunity will not insulate a non-outsider from
"liab[ility] in damages to the [terminated] employee for so
procuring such termination of the employment if the [non-outsider]
so acted with malice and for a reason not reasonably related to the
protection of a legitimate business interest of the [non-
outsider]." Smith, 289 N.C. at 94, 221 S.E.2d at 296.

20

The Amended Complaint clearly satisfies the first two elements of a claim for tortious interference with an employment contract against Defendants Cole and Moore, by alleging (A) that "Plaintiff had a valid employment contract with Defendant City of Graham since November of 1996" (Docket Entry 12 at 9; see also id. at 2 ("On or around November 28, 1996, Plaintiff started working with [Defendant] City [of Graham] and [he] began working for [Defendant City of Graham's] Fire Department [on] April 2, 2002."), 9 ("Defendant [City of Graham] paid Plaintiff approximately $51,500 a year.")), and (B) that "Defendants [] Cole and [] Moore were aware that Plaintiff was employed with [Defendant] City of Graham as they were [his] supervisors" (id. at 9). "[C]onstru[ing] the [Amended C]omplaint in the light most favorable to [Plaintiff], as it must when ruling on a Rule 12(b)(6) motion to dismiss," Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 189 (4th Cir. 2015), the Court likewise should conclude that Plaintiff has pleaded sufficient factual matter to meet the final three elements of his claim that Defendants Cole and Moore tortiously interfered with Plaintiff's employment contract with Defendant City of Graham, i.e., that Defendants Cole and Moore "intentionally induced [Defendant City of Graham] not to perform the contract . . . without justification[, which] result[ed] in actual damage to [P]laintiff," United Laboratories, 322 N.C. at 661, 370 S.E.2d at 387. In that regard, the Amended Complaint alleges:

1) in January 2022, approximately two months after Plaintiff signed onto a document complaining about Defendant Moore's management of Defendant City of Graham's Fire Department and Defendant Cole learned about Plaintiff's action on that front (see Docket Entry 12 at 2-3), Defendants Cole and Moore "questioned Plaintiff in a condescending and pressuring manner to force an admission that Plaintiff could not perform his duties" (id. at 3);

2) a short time later, "Plaintiff took a [month-long] leave of absence from work due to mental stress at the hands of [Defendant] Moore" (id.);

3) within about two months of Plaintiff's return to work, once again, "[Defendant] Cole exhibited aggressive behavior toward Plaintiff by yelling at him and stating 'I'm tired of your attitude and I don't want to hear anything else about targeting'" (id. at 4), despite the fact that "Plaintiff didn't mention anything about targeting in that meeting" (id.; see also id. ("[Defendant] Cole's behavior was a clear indication of his retaliation against Plaintiff for his participation in the complaints against [Defendant] Moore."));

4) a few days thereafter, "Plaintiff filed a formal complaint against [Defendant] Cole and [Defendant] Moore regarding the hostile work environment they created against [Plaintiff]" (id.), following which "Plaintiff continued to have issues with [Defendant] Cole and [Defendant] Moore" (id. at 5; see also id.

22

(giving, as examples, accounts of incidents (A) "where [Defendant] Cole scrutinized Plaintiff's tone on how he responded over radio traffic and threatened that he was contemplating sending Plaintiff home," but "all co-workers advised that [Plaintiff] sounded like he always did," and (B) where Defendant Cole "forced [Plaintiff] to sign his evaluation that he did not agree with to receive his accumulated paid time off"));

5) "Plaintiff received a final written warning on July 28, 2022 for not completing online training" (id.), which he "was unable to complete . . . because he was out on medical leave and [due to] the psychological distress he suffered in the hostile work environment created by [Defendant] Cole and [Defendant] Moore" (id.), notwithstanding the fact that "other employees [who] had not completed training requirements [] had not been written up or given a timeline" (id. at 6; see also id. (describing instance in which Defendant Moore cleared "younger employee" to engage in work for which he "had not completed [his] training"));

6) "[o]n or around October 31, 2022, [Defendant] Cole informed Plaintiff to obtain a physical" (id.) and, despite having promptly scheduled his physical, "[o]n or around November 4, 2022, Plaintiff received a Pre-Disciplinary Notice" (id.) and then "received [a] Notice of Dismissal on November 8, 2022" (id.), which "provided an incomplete factual basis and omitted pertinent information that would have avoided termination" (id.); and

23

7) "termination of Plaintiff['s employment] resulted in reduced retirement benefits" (id. at 10), as well as loss of "eligib[ility] for health retirement benefits" (id.), "loss of income, . . . and emotional pain and suffering" (id.).

Defendants have not contested Plaintiff's satisfaction of elements one through three and five of this claim; rather, they have focused exclusively on the fourth element – whether Defendants Cole and Moore acted "without justification," United Laboratories, 322 N.C. at 661, 370 S.E.2d at 387 – and have asserted entitlement to qualified immunity as non-outsiders to the contract. (See Docket Entry 16 at 8 ("Because [Defendants Cole and Moore] are non-outsiders and Plaintiff has not plausibly alleged that their acts were malicious and done without legal justification, this claim fails."), 9 (observing that "defendant[s with] an interest in the subject matter of the contract . . . enjoy[] a qualified immunity for actions taken in furtherance of that interest" and arguing that Plaintiff "ha[d] not alleged facts showing that Defendants [Cole and Moore] acted with malice, without legal justification, and in furtherance of personal rather than corporate interests" (internal quotation marks omitted)).) "As [] manager[s] at the [Fire Department], [Defendants Cole and Moore each] would be classified as a 'non-outsider [to Plaintiff's employment contract].'" Wilkes, 2017 WL 1215749, at *6; see also Combs v. City Elec. Supply Co., 203 N.C. App. 75, 84, 690 S.E.2d 719, 726 (2010) (holding that

24

"head supervisor of [company] . . . is considered a 'non-outsider'").[11]  Accordingly, "the element that [they] acted without justification is <u>potentially</u> vitiated by [their] position[s]." <u>Embree Constr. Grp., Inc. v. Rafcor, Inc.</u>, 330 N.C. 487, 498, 411 S.E.3d 916, 924 (1992) (emphasis added).  Put another way, those managerial positions gave Defendants Cole and Moore "a qualified privilege to interfere with contractual relations between [Defendant City of Graham] and [Plaintiff]." <u>Id.</u> (internal quotation marks omitted).  As a function of that privilege, their alleged "acts [as managers] in inducing [Defendant City of Graham] to sever contractual relations with [Plaintiff] are presumed to have been done in the interest of [Defendant City of Graham]." <u>Id.</u> (internal quotation marks omitted).

"The privilege, however, is qualified, not absolute; the presumption that [Defendant Cole's and Defendant Moore's] acts [we]re in [Defendant City of Graham's] interest and thus justified is overcome when the[ir] <u>means</u> or the[ir] <u>motives</u> [we]re <u>improper</u>." <u>Id.</u> (emphasis added); <u>see also</u> <u>Smith</u>, 289 N.C. at 87, 221 S.E.2d at 292 (equating effort "to bring about a termination of [the plaintiff's employment contract] for a reason unrelated to [a] legitimate business interest" with "malicious procurement of the termination of [the] contract").  Here, "[P]laintiff state[d] the

_____

    11 As quoted previously, the Amended Complaint (on its face) establishes the status of Defendants Cole and Moore as "supervisors of Plaintiff" (Docket Entry 12 at 9).

25

fourth element of the claim of tortious interference with contract when he allege[d] facts supporting the allegation that [Defendant Cole's and Defendant Moore's] actions were in their personal interest," Embree Constr., 330 N.C. at 499, 411 S.E.2d at 924-25. Those factual allegations (reviewed at length above), when viewed "in the light most favorable to [Plaintiff]," Covey, 777 F.3d at 189, support a reasonable inference that "Defendants Cole and Moore acted with malice in [inducing] the[] termination of Plaintiff's employment with [Defendant] City of Graham by retaliating against him for reporting them to [Defendant] City [of Graham] officials" (Docket Entry 12 at 10), and by pursuing that improper (and personally interested) motive via the improper (and unlawful) means of "discriminating against Plaintiff and holding him to a different standard than that of younger employees" (id.). See Wilkes, 2017 WL 1215749, at *7 ("Taking [the] factual allegations [that the defendant-manager procured the plaintiff-employee's firing to retaliate for her complaints about his sexually harassing conduct] as true, which is required at this stage of the litigation, [the p]laintiff[-employee] has sufficiently stated a claim for tortious interference with contract by [the defendant-manager].").[12]

---

12 Notably, Defendants have conceded that the Amended Complaint alleges sufficient factual matter to state a claim for wrongful termination on the basis of age. (See Docket Entry 16 at 6 ("While Defendants believe the facts at summary judgment will support that [Plaintiff's] termination was not related to his age in any way, Defendants now seek dismissal regarding only the second
(continued...)

26

Defendants endeavor to avoid that conclusion by adverting to authority holding "that, in order to survive a motion to dismiss, 'the complaint must admit of no motive for interference other than malice.'" (Docket Entry 16 at 8 (quoting Filmar Racing, Inc. v. Stewart, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001)).)[13] From that predicate, Defendants reason as follows:

> While [the Amended Complaint] refers to complaints [Plaintiff] made against [Defendants Moore and Cole], . . . the [Amended] Complaint is filled with Plaintiff's admitted failures. Given that [Defendant] Moore and [Defendant] Cole reasonably required the completion of certification, online training, and physical exams by their employees, Plaintiff cannot plausibly demonstrate that either [Defendant] Moore or [Defendant] Cole acted with malice, without legal justification, and in furtherance of [their] personal rather than [Defendant City of Graham's] interests.

(Id. at 9-10.) The Court should reject that faulty reasoning.

To begin, Defendants' characterization of the Amended Complaint (without citation or elaboration) as "filled with Plaintiff's admitted failures" (id.) "essentially turns the Rule 12(b)(6) standard on its head," SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 441 (4th Cir. 2015) (Wynn, J., concurring), by

---

12(...continued)
purported reason [for the wrongful termination claim], which is effectively a retaliation claim.").)

13 The North Carolina Supreme Court has endorsed that general, legal principle. See Button v. Level Four Orthotics & Prosthetics, Inc., 380 N.C. 459, 468, 869 S.E.2d 257, 265 (2022) ("Further, in order to survive dismissal, a complaint alleging tortious interference must admit of no motive for interference other than malice." (internal brackets and quotation marks omitted)).

27

casting the Amended Complaint "in a light least favorable to [Plaintiff and] viewing the facts and reasonable inferences in the light most favorable to Defendants [Cole and Moore]," id. In fact, contradictory to Defendants' contention that the Amended Complaint establishes "Plaintiff's admitted failures" (Docket Entry 16 at 10), the Amended Complaint explicitly alleges that Defendants Cole and Moore improperly attempted "to force an admission that Plaintiff could not perform his duties" (Docket Entry 12 at 3), but "Plaintiff advised them that he could handle his duties" (id.). Similarly, although the Amended Complaint refers to "Plaintiff receiv[ing] a written warning for failure to complete daily duties on or around May 19, 2022" (id. at 4), read fairly – let alone "in the light most favorable to [Plaintiff], as [the Court] must when ruling on a Rule 12(b)(6) motion to dismiss," Covey, 777 F.3d at 189 – the Amended Complaint does not concede the validity of that warning; to the contrary, the reference to that warning appears as a line item in the Amended Complaint's list of unjustified actions taken by Defendants Cole and Moore to retaliate against Plaintiff for criticizing their conduct (see Docket Entry 12 at 2-6).[14]

_____

14 That list also includes (for example) an incident "where [Defendant] Cole scrutinized Plaintiff's tone . . . respond[ing] over radio traffic and threatened . . . [to] send[ him] home" (Docket Entry 12 at 5), but "all co-workers advised that [he] sounded like he always did" (id.), as well as Plaintiff's "recei[pt of] a final written warning . . . for not completing online training" (id.), despite the fact that he "was unable to complete this training because he was out on medical leave" (id.).

Nor, "constru[ing] the [Amended C]omplaint in the light most favorable to [Plaintiff]," Covey, 777 F.3d at 189, "and draw[ing] all reasonable inferences in [his] favor," Bing, 959 F.3d at 616, could the Court conclude "that [Defendant] Moore and [Defendant] Cole reasonably required the completion of certification, online training, and physical exams by their employees" (Docket Entry 16 at 10). First, the Amended Complaint does not mention anything about any "certification" (id.). (See Docket Entry 12 at 1-11.) The Rule 12(b)(6) standard "ordinarily limits [the C]ourt's review to the well-pled facts in the [Amended C]omplaint," Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015), and Defendants have offered no rationale for the Court to transgress those limits to entertain their undeveloped argument about an unspecified certification (see Docket Entry 16 at 10). Second, the Amended Complaint contradicts the notion "that [Defendant] Moore and [Defendant] Cole reasonably required the completion of . . . online training[] and physical exams by their employees" (id. (emphasis added)). (See Docket Entry 12 at 6 (alleging that "other employees [who] had not completed training requirements [] had not been written up or given a timeline," that Defendant Moore cleared a "younger employee" to engage in work for which he "had not completed [his] training," and that Plaintiff promptly scheduled his physical as directed by Defendant Cole, but

29

nevertheless, in rapid succession, "received a Pre-Disciplinary Notice" and "Notice of Dismissal . . . effective immediately").)

To summarize, viewed "in the light most favorable to [Plaintiff]," Covey, 777 F.3d at 189, with "all reasonable inferences in [his] favor," Bing, 959 F.3d at 616, the Amended Complaint "admit[s] of no motive for interference [in Plaintiff's employment contract by Defendants Cole and Moore] other than malice" (Docket Entry 16 at 8 (internal quotation marks omitted)).[15] The Court therefore should not dismiss this claim at this juncture.

#### Breach of Implied Duty of Good Faith and Fair Dealing

Plaintiff's final claim asserts that "Defendant City of Graham breached its implied duty of good faith and fair dealing in their dealings with [P]laintiff in connection with the employment agreement regarding Plaintiff's employment benefits provided by [Defendant] City of Graham." (Docket Entry 12 at 10; see also

---

15 The Reply describes Robinson v. Procter & Gamble Mfg. Co., No. 1:18CV133, 2019 WL 1005504, at *8 (M.D.N.C. Mar. 1, 2019) (unpublished) (Osteen, J.), and Stasinopolous v. L.M. Sandler & Sons, Inc., No. 5:18CV245, 2018 WL 6068056, at *4 (E.D.N.C. Nov. 20, 2018) (unpublished), as "analogous to this case and support[ive of] dismissal." (Docket Entry 20 at 6.) "[F]actual distinctions . . . render [those two cases] inapposite." David R. McGeorge Car Co., Inc. v. Leyland Motor Sales, Inc., 504 F.2d 52, 55 (4th Cir. 1974). Most significantly, in the latter case, the court concluded that the plaintiff "ha[d] failed to allege any specific facts which would support a finding that the individual defendants acted in furtherance of personal rather than corporate interests," Stasinopolous, 2018 WL 6068056, at *4, and, in the former case, per Judge Osteen, "this [C]ourt d[id] not find it plausible that [the defendant's] actions were driven by any personal motive," Robinson, 2019 WL 1005504, at *7.

Docket Entry 18 at 11 (acknowledging that this claim rises and falls with claim that Plaintiff's firing breached his implied employment contract).) As Defendants have argued (and as, for reasons discussed in relation to Plaintiff's breach of implied contract claim, the undersigned Magistrate Judge has recommended the Court conclude), Plaintiff held only at-will employment because the Amended Complaint does not "allege that there was any contractual agreement establishing a definite term of employment between Plaintiff and [Defendant] City [of Graham]." (Docket Entry 16 at 10.) "North Carolina law does not recognize a claim for wrongful discharge of an at-will employee based on an implied covenant of good faith and fair dealing." Hardin v. Belmont Textile Mach. Co., No. 3:05CV492, 2006 WL 2229002, at *4 (W.D.N.C. Aug. 3, 2006) (unpublished) (citing Salt v. Applied Analytical, Inc., 104 N.C. App. 652, 661, 412 S.E.2d 97, 102 (1991)); accord, e.g., Ramos v. AAA of Carolinas, No. 1:17CV58, 2017 WL 5896904, at *5 (W.D.N.C. Oct. 31, 2017) (unpublished), recommendation adopted, 2017 WL 5894185 (W.D.N.C. Nov. 29, 2017) (unpublished); Curran v. First Union Mortg. Corp., No. 5:95CV975, 1997 WL 907909, at *2 (E.D.N.C. Mar. 24, 1997) (unpublished); Connolly v. Fieldcrest Cannon, Inc., No. 2:93CV209, 1994 WL 752149, at *1 (M.D.N.C. June 27, 1994) (unpublished); see also Amos, 331 N.C. at 360, 416 S.E.2d at 173 (reiterating that North Carolina law "d[oes] not recognize a separate claim for wrongful discharge in bad faith").

31

Under these circumstances, "[Plaintiff's] claim for breach of an implied covenant of good faith and fair dealing [should be] dismissed." <u>Hardin</u>, 2006 WL 2229002, at *5.

### Official Capacity Claims

The Amended Complaint's caption states that Plaintiff brought this action against Defendants Cole and Moore,[16] as well as the other individual Defendant, Megan Garner, Defendant City of Graham's "City Manager" (Docket Entry 12 at 2), "individually and in his [or her] official capacity" (<u>id.</u> at 1). According to the instant Motion, "[t]he claims asserted against the individual Defendants in their official capacities are duplicative of the claims against [Defendant] City of Graham." (Docket Entry 15 at 2.) Plaintiff lodged his claim for "deprivation of rights in violation of 42 U.S.C. § 1983 against all Defendants." (Docket Entry 12 at 7.) "[T]he § 1983 claim[s] against [the individual Defendants] in [their] official capacit[ies] as [Defendant City of Graham's employees are] essentially [] claim[s] against [Defendant City of Graham] and thus should be dismissed as duplicative." <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004).[17]

---

16 The Amended Complaint identifies Defendants Cole and Moore as employees of Defendant City of Graham's Fire Department, where they served as "supervisors of Plaintiff." (Docket Entry 12 at 9.)

17 Plaintiff's Brief in Opposition to the instant Motion does not address this point, but instead discusses immunity doctrines under North Carolina law. (<u>See</u> Docket Entry 18 at 11-12 (citing and/or quoting North Carolina case law and statutes in arguing that
(continued...)

CONCLUSION

The Amended Complaint states plausible claims against Defendant City of Graham for violation of the North Carolina Wage and Hour Act and against Defendants Cole and Moore for tortious interference with Plaintiff's employment contract with Defendant City of Graham; however, the Amended Complaint fails to state plausible claims for wrongful termination in violation of public policy premised on a theory of retaliation for opposing age or disability discrimination, for breach of implied contract, and for breach of implied duty of good faith and fair dealing. Lastly, Plaintiff's official capacity claims against Defendants Moore, Cole, and Garner under Section 1983 merely duplicate his Section

_____

17(...continued)
"[c]ourts make a distinction between public officials and public employees in determining their immunity from liability" and that, "[e]ven if the [C]ourt finds that the individual [D]efendants are public officials, their actions puncture the veil of immunity").) Conversely, Defendants have not developed any argument for dismissal of the official capacity aspect of Plaintiff's claim(s) for tortious interference with his employment contract against Defendants Cole and Moore, which do not duplicate any claim against Defendant City of Graham. (See Docket Entry 16 at 11-12 (arguing that "Plaintiff's claims against the [i]ndividual Defendants . . . in their official capacities should be dismissed as duplicative," but without accounting for absence of any duplication as concerns tortious interference claim); Docket Entry 20 at 7-8 (same); see also Docket Entry 12 at 9 (bringing tortious interference claim only "against Defendants Moore and Cole").) In the absence of such argument, the Court should not dismiss Plaintiff's official capacity claims against Defendants Cole and Moore for tortious interference with contract. See Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that [the party] elected not to do.").

1983 claim against their employer, Defendant City of Graham, and thus those official capacity claims should not proceed.[18]

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 15) be granted in part and denied in part, in that (A) the Court should dismiss Plaintiff's claims (i) for wrongful termination in violation of public policy premised on a theory of retaliation for opposing age or disability discrimination, (ii) for breach of implied contract, (iii) for breach of implied duty of good faith and fair dealing, and (iv) under Section 1983 as against Defendants Moore, Cole, and Garner in their official capacities, but (B) all other claims in the Amended Complaint should proceed.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 10, 2025

---

18 The instant Motion does not contest the sufficiency of the Section 1983 claim(s) brought against Defendant City of Graham and against Defendants Moore, Cole, and Garner in their individual capacities, or the claim for wrongful termination in violation of the public policy proscribing age discrimination brought against Defendant City of Graham. (See Docket Entry 15 at 1-2.) The resolution of the instant Motion thus does not affect those claims.